UNITED STATES, Appellee,

v.

Isaac S. SERMONS, Jr., Specialist Five,
U.S. Army, Appellant.

No. 40580.
SPCM 15215.

United States Court of Military Appeals.

Dec. 20, 1982.

For Appellant: *Captain Edward J. Wa-linsky* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Charles A. Byler, Captain Robert L. Gallaway, Captain Steven T. Cain* (on brief); *Captain David M. England.*

For Appellee: *Captain Richard J. Fadgen* (argued); *Colonel R.R. Boller, Major Ted B. Borek, Major John T. Meixell* (on brief).

## OPINION OF THE COURT

COOK, Judge:

Tried by special court-martial, the accused was convicted, despite his pleas, of possessing and selling cocaine, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The adjudged and approved sentence extends to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $298 pay per month for 3 months, and reduction to Private E–1. The Court of Military Review affirmed in a short-form opinion.

The accused contends that the military judge erred by failing to give an instruction on entrapment requested by the defense counsel. On the basis of the evidence of record, we disagree and affirm.

The Government's evidence at trial was largely based on the testimony of an informer, Airman Scaramell. Under the direction of agents of the United States Army Criminal Investigation Command (CID) who provided him with $40 to pur-

chase drugs, Scaramell went to the post Non-Commissioned Officers' Club on December 19, 1979, looking for the accused. At about ten o'clock Scaramell saw the accused standing near the bar and "asked him if he would be able to get me some cocaine." The accused replied: "no, not right now .... I just got here, I want to hang out for awhile." Scaramell said, "all right" and returned to his table. Sometime later, Scaramell again approached the accused and "asked him again, and he said, all right. He said he would go." The two met in a hallway near the bathrooms and discussed the price to be paid. The accused said forty dollars was not enough so the informer gave him twenty dollars of his own money. According to Scaramell, the accused said he would return around eleven o'clock. However, he did not. When the Club closed at twelve o'clock, Scaramell went outside and waited over one-half hour. After this time passed, the accused drove up in his car and Scaramell met him in the parking lot where the accused handed him a packet containing cocaine. Scaramell gave the packet to the CID agents who had been watching the events of the evening. Scaramell's testimony was corroborated by the testimony of the several CID agents who were present in and around the NCO Club.

On cross-examination Scaramell stated that he had approached the accused "prior to December 19th in an attempt to get him to get ... [him] cocaine," but the accused "did not exactly say 'no'—what he said was that he'd wanted the money right then and there—[up] front—and I didn't have it. So, everything just kept on getting delayed."

At the conclusion of the Government's case, defense counsel moved for a finding of not guilty on the grounds of insufficiency of the evidence and entrapment. The military judge denied the motion.

Then the accused took the stand and denied any recollection of the events of December 19 or of having met Scaramell. He stated that he had neither received any money from Scaramell nor transferred or sold any drugs to Scaramell. The accused concluded: "I don't deal with drugs, I don't do drugs, and I don't get involved with drugs."

Prior to the case being submitted to the court members, defense counsel requested an instruction on entrapment, based upon the fact that Scaramell had made several unsuccessful approaches to the accused prior to consummating the sale. Trial counsel countered by arguing that the entrapment defense was not raised by the evidence. The military judge declined to give either the entrapment instruction or the agency instruction on the ground that they were not raised by the evidence. When defense counsel reiterated his request for an entrapment instruction based upon *United States v. Garcia,* 1 M.J. 26 (C.M.A.1975), the military judge recognized that the entrapment defense could be raised by the Government's own evidence and that entrapment and denial were not "particularly mutually exclusive," but he adhered to his earlier ruling.

We have recently examined the entrapment defense both in light of the recent decisions of the United States Supreme Court and our own previous holdings in *United States v. Vanzandt,* Dkt. No. 40408 (C.M.A.1982). There we identified certain rules which govern the entrapment defense:

First, the defense is not raised unless the accused's commission of the alleged criminal act is proven beyond reasonable doubt and there is evidence that the suggestion or inducement for the offense originated with a government agent. Second, once the defense is raised, the Government must prove that the accused was predisposed to commit the criminal activity and needed only the opportunity to commit the crime. Third, with one limited exception, the issue must be resolved by the factfinder.

The accused may raise the issue either through his own evidence or through cross-examination of the government witnesses. After the issue is raised, the Government may counter with its own

evidence as to the intent and predisposition of the accused to commit the crime—which may include evidence of past misconduct. In any event, the Government must prove the absence of entrapment beyond a reasonable doubt just like any element of the crime.

Thus, the subjective test of entrapment involves balancing the accused's resistance to temptation against the amount of government inducement. The focus is on the accused's latent predisposition to commit the crime, which is triggered by the government inducement. The existence of reasonable suspicion by the police is immaterial so there is no occasion to offer or receive evidence establishing whether or why any suspicion existed. Indeed, frequently the information which establishes reasonable suspicion is hearsay in nature and its consideration by court members, even under limiting instructions, may be prejudicial to the accused.

*Id.* at ——— (footnotes omitted).

■ If the evidence, whether produced by the defense or the Government, raises the defense of entrapment, the fact finders must be instructed as to entrapment. *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); *United States v. Vanzandt* and *United States v. Garcia,* both *supra.* The military judge refused to give the instruction on the ground that the defense was not raised by the evidence from either side. Hence, we must examine the evidence to determine the correctness of his ruling as a matter of law.

■ As we said in *United States v. Garcia, supra* at 29:

The defense of entrapment is not predicated upon the degree of covert police involvement in the criminal activity of the accused; rather, it is rooted in the concept that Government officers cannot instigate the commission of a crime by one who would otherwise remain law abiding. Consequently, the focus of the defense is not upon the Government agent but upon the accused, and the essential inquiry is upon the accused's "intent or predisposition . . . to commit the crime." [Citation omitted.]

■ Turning to the evidence of record, the fact that the informer approached the accused on several occasions before the sale of drugs was accomplished does not, by itself, decide the issue of entrapment, since it was not the lack of criminal predisposition of the accused but instead the informer's lack of money which prevented the earlier consummation of the sale of the drugs. When the money was tendered and the time suited the accused, he accepted the money and eventually produced the drugs. Thus, it is clear that the accused always had the predisposition to sell drugs, but only on his own terms. The evidence excludes any possibility that the accused was entrapped. *United States v. Garcia, supra.* The complete denial of the transaction by the accused has no specific bearing on the entrapment issue; it is simply his version of the events in question.* Further, we do not find "the shocking display of conduct on the part of law enforcement officials which the law of entrapment was designed to purge" in the several requests of Scaramell to purchase cocaine from the accused. *United States v. Suter,* 21 U.S.C.M.A. 510, 516, 45 C.M.R. 284, 290 (1972). Where the predisposition of the accused to commit the crime

---

* Appellate counsel have focused their attention on the issue of whether entrapment may be raised by an accused who denies commission of the offense. Our previous decisions have recognized that "the two aspects of the defense [alibi and entrapment] are not so repugnant to each other that disbelief of the first necessarily disproves the second." *United States v. Garcia,* 1 M.J. 26, 28 (C.M.A.1975); *contra, United States v. McGlenn,* 8 U.S.C.M.A. 286, 24 C.M.R. 96 (1957). The trend, if not the weight, of authority seems to accept the logically inconsistent defenses of denial and entrapment. *See United States v. Greenfield,* 554 F.2d 179 (5th Cir.1977), *cert. denied,* 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978); *United States v. Demma,* 523 F.2d 981 (9th Cir.1975). However, we need not reach this issue since the military judge indicated his awareness of the law but chose to ground his decision on the lack of a factual basis for the entrapment instruction. We agree with his decision.

was conclusively established by the evidence, the defense of entrapment will not lie. *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).

Finding no error in the ruling of the military judge, we affirm the decision of the United States Army Court of Military Review.

Chief Judge EVERETT concurs.

FLETCHER, Judge (concurring):

I agree with the resolution of this case. My perusal of the testimony of Agent Scaramell and of appellant reveals a very close case regarding whether an instruction regarding entrapment was factually warranted. In such instances a military judge is well-advised to instruct in order to allow fair resolution along lines more economical than the full-blown appellate process.